UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ROBERT D. MURPHY, )
)
    Plaintiff, )
) No. 1:10-cv-35
v. )
) *Lee*
CSX TRANSPORTATION, INC., )
)
    Defendant. )

## **MEMORANDUM AND ORDER**

Plaintiff Robert D. Murphy ("Plaintiff"), while working as a freight conductor for Defendant CSX Transportation, Inc. ("CSX" or "Defendant"), alleges he was injured due to Defendant's negligence. Plaintiff brings suit under the Federal Employers' Liability Act ("FELA"). Before the Court is Defendant's motion for summary judgment [Doc. 29], in which Defendant argues that Plaintiff has no evidence that his injuries were caused by the negligence of CSX. For the reasons explained below, Defendant's motion will be **DENIED**.

### I.    BACKGROUND

The parties disagree with respect to the characterization or significance of certain facts, but they each draw primarily on Plaintiff's accounts of the incident—Defendant from Plaintiff's deposition testimony, and Plaintiff from his own deposition and declaration. In each of those accounts, Plaintiff describes an incident that allegedly occurred on February 28, 2008, while Plaintiff was working as a conductor on one of Defendant's trains [Doc. 35-1 at PageID #: 255; Doc. 29-1 at PageID #: 147-48]. Plaintiff alleges he was thrown from his seat when the train "bottomed out," causing injury [Doc. 1 at PageID #: 3]. For purposes of this motion, Defendant does not contest whether Plaintiff fell from his seat, suffering injury. Instead, Defendant argues only that Plaintiff's

fall was not due, in whole or in part, to Defendant's negligence [Doc. 30 at PageID #: 167, 173].[3]

A. **Plaintiff's Deposition Testimony**

In his deposition, Plaintiff testified as follows: On the date of the incident, he was traveling in Defendant's locomotive as it approached a location known as the "Kincaid signal" [Doc. 29-1 at PageID #: 147]. The train was traveling along a left-hand curve in the track, and Plaintiff reached with his right hand to grab the radio microphone so that he could "call th[e] signal" [*id.* at PageID #: 148]. At that moment, the train bottomed out over a short distance [*id.* at PageID #: 147, 150]. Plaintiff described the sensation as though a spring had fully compressed, then rebounded [*id.* at PageID #: 148]. Plaintiff was bounced out of his seat and fell to the floor of the locomotive [*id.* at PageID #: 151, 152]. The "bounce" was accompanied by "quite a bit" of lateral motion, but it was the "going down motion" that knocked Plaintiff from his seat [*id.* at PageID #: 148].

Plaintiff testified that his seat did not hold him in place because it was "loose" [*id.* at PageID #: 152]. Plaintiff acknowledged that the seats are "supposed to be able to turn a little bit," and he explained that is what he meant when he said the seat was "loose" [*id.*]. There was nothing obviously wrong with the seat, but it was simply "old" and "sloppy" [*id.*]. Like all the other locomotive seats Plaintiff had ever seen, this seat did not have a seat belt or harness [*id.*].

Plaintiff had ridden on the section of the track where he fell from his seat "a couple hundred times" before the incident [*id.* at PageID #: 148]. Plaintiff had "been on other locomotives that had not handled that curve well," and he had experienced some lateral motion there before, but not enough to cause any concern [*id.* at PageID #: 149-50]. Plaintiff stated he had "never seen it even come close to as bad as it was that day" [*id.* at PageID #: 149]. Based on his experience while riding

---

[3] Whether Plaintiff did in fact fall from his seat remains a disputed issue for trial [*see* Doc. 38-1 at PageID #: 291].

2

trains on that section of track, Plaintiff was not aware there was a potential of bottoming out [*id.*]. Simply put, Plaintiff was not prepared for any significant lateral or up-and-down motion [*id.*]. Plaintiff did not report the incident, and he continued to ride trains over the same tracks [*id.* at PageID #: 150]. On subsequent occasions, Plaintiff experienced "lateral motion" there, but never had another experience like the one that caused his fall [*id.*].

### B. Plaintiff's Declaration

In a short declaration, Plaintiff provides the following account of the incident: He was riding in one of Defendant's trains near the Kincaid signal when he suffered an on-the-job injury [Doc. 35-1 at PageID #: 255]. Prior to the incident, "it was common knowledge on the railroad that the section of track where [the] train bottomed out had caused other trains to bottom out." [*id.*]. In fact, trains "routinely" bottomed out at the Kincaid signal [*id.*]. Plaintiff had been on trains that had bottomed out at the Kincaid signal previously, but the incident that caused his injury was "more severe than any other bottoming out" he had experienced before [*id.*]. Based on Plaintiff's experience working for railroad companies, Plaintiff opined that it is "unsafe" for a locomotive to bottom out the way his did [*id.* at PageID #: 255-56]. Plaintiff also stated in his declaration that his seat "did not lock, which caused looseness in the seat." [*id.* at PageID #: 256]. That looseness, along with the bottoming out, caused Plaintiff to fall from his seat and suffer injuries to his back [*id.*].

## II. ANALYSIS

As noted above, CSX argues only that Plaintiff cannot show that his injuries were due to any negligence on its part. Specifically, CSX argues that Plaintiff's declaration, to the extent that it is inconsistent with his deposition testimony, cannot create a factual dispute. Considering the evidence in the deposition testimony, furthermore, CSX argues that negligence cannot be inferred from the mere occurrence of the accident and that Plaintiff cannot, without expert testimony, establish the

3

existence of an unsafe condition in either the locomotive seat or the track. Finally, CSX argues that Plaintiff's claim of negligence *per se* was not raised in his complaint and should therefore be disregarded.

### A. Standard of Review

Summary judgment is mandatory where "there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[4] A "material" fact is one that *matters*—i.e., a fact that, if found to be true, might "affect the outcome" of the litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The applicable substantive law provides the frame of reference to determine which facts are material. *Anderson*, 477 U.S. at 248. A "genuine" dispute exists with respect to a material fact when the evidence would enable a reasonable jury to find for the non-moving party. *Id.*; *National Satellite Sports, Inc. v. Eliadis Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). In determining whether a dispute is "genuine," the court cannot weigh the evidence or determine the truth of any matter in dispute. *Id.* at 249. Instead, the court must view the facts and all inferences that can be drawn from those facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *National Satellite Sports*, 253 F.3d at 907. A mere scintilla of evidence is not enough to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252; *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

The moving party bears the initial burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. James*, No. 7:09-CV-98 (HL),

---

[4] Rule 56 was amended effective December 1, 2010, "to improve the procedures for presenting and deciding summary-judgment motions." Fed. R. Civ. P. 56, Advisory Committee Note to 2010 Amendments. The 2010 amendments did not affect the standard for granting summary judgment, and earlier caselaw relating to that standard therefore remains good law. *Id.*

4

2011 WL 837179, at *1 (M.D. Ga. Feb. 2, 2011). The movant must support its assertion that a fact is not in dispute by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c). If the moving party carries this burden, the opposing party must show that there is a genuine dispute by either "citing to [other] particular parts of materials in the record" or "showing that the materials cited do not establish the absence . . . of a genuine dispute. *Id.* In reply, the movant may then attempt to show that the materials cited by the nonmovant "do not establish the . . . presence of a genuine dispute." *Id.* Either party may also attempt to challenge the admissibility of its opponent's evidence. *Id.*

The court is not required to consider materials other than those specifically cited by the parties, but may do so in its discretion. *Id.* If a party fails to support its assertion of fact or to respond to the other party's assertion of fact, the court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

### B. Liability Under FELA

Under FELA, railroads "are made answerable in damages for an employee's 'injury or death resulting in whole or in part from [the railroad's] negligence.'" *CSX Transp., Inc. v. McBride*, 131 S. Ct. 2630, 2643 (2011) (quoting 45 U.S.C. § 51). As the parties each acknowledge, a plaintiff must prove all the elements of a common-law negligence claim in order to prevail under FELA: duty, breach, causation, and damages. *Adams v. CSX Transp., Inc.*, 899 F.2d 536, 539 (6th Cir. 1990). As explained above, Defendant challenges Plaintiff's ability to prove breach of the duty of care.

While the parties generally agree with respect to which elements of negligence are at issue

5

here, they differ in how they characterize what those elements require. Their differences require consideration of the meaning of "proximate cause" in this case. Of course, any injury is preceded by innumerable and untraceable "causes": a rain-slicked highway, a gust of wind, or a pedestrian hurrying across a busy crosswalk. *See Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 266 n.10 (1992) ("In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the dawn of human events, and beyond."). "But for" any of its antecedents, any particular injury might not have occurred. The law has long recognized, therefore, that not every cause-in-fact is a *legal* cause of an injury. *See generally Palsgraf v. Long Island R.R. Co.*, 162 N.E. 99 (N.Y. 1928). The concept of "proximate" cause therefore developed in the common law to delineate those causes which are culpable from those which are not. While the various formulations have differed, *see McBride*, 131 S. Ct. at 2642 (opinion of four members of the Court), "foreseeability has . . . long been an aspect of proximate cause," *id.* at 2651 (dissent of four members of the Court).

According to Defendant, Plaintiff must establish "the common law principles of negligence"—i.e., duty, breach, foreseeability, causation, and damages [Doc. 30 at PageID #: 166]. By this, Defendant appears to argue that the traditional concept of proximate cause should govern the case. The common law of negligence, however, does not strictly apply in FELA cases. *See McBride*, 131 S. Ct. at 2637-38 (explaining that FELA does "not incorporate any traditional common-law formulation of 'proximate causation'") (citing *Rogers v. Mo. Pac. R.R. Co.*, 352 U.S. 500, 506 (1957)). Instead, the statute itself provides the requirements for a plaintiff's proof. A plaintiff must show first that the railroad was breached a duty—i.e., that it failed "to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances." *Id.* at 2643 (quoting *Gallick v. Baltimore & Ohio R.R. Co.*, 372 U.S. 108, 118

6

(1963)). To make this showing, a plaintiff must prove that the railroad reasonably should have foreseen that its conduct "would or might result in a mishap and injury."[5]  *Id.* at 2643. Foreseeability, therefore, is an "essential ingredient" in proving breach, but not foreseeability of any *particular* injury. *Id.*

Once this freestanding negligence is established, the plaintiff must show that his injury "result[ed] in whole or in part from the negligence." The plaintiff need not satisfy the traditional proximate cause standard, but must instead show only that the railroad's negligence played some part, "even the slightest" part, in producing his specific injury. *Rogers*, 352 U.S. at 506. In other words, the plaintiff need not show that "'the extent of the injury or the manner in which it occurred' was . . . 'probable' or 'foreseeable.'" *McBride*, 131 S. Ct. at 2643. Still, while the extent or mechanism of injury need not be foreseeable, the plaintiff must nevertheless show *something* more than "but for" causation. *Id.* at 2643-44. Where "common sense" instructs that the negligence is too attenuated from the resulting injury, there is no genuine issue of fact on causation. *Id.* at 2644 (noting that in "far out 'but for' scenarios," there is no question for a jury). As an example of this "common sense" determination, the *McBride* Court cited *Nicholson v. Erie R.R. Co.*, 253 F.2d 939 (2d Cir. 1958). In *Nicholson*, the railroad's female employee was injured when she was struck by a passenger's baggage while returning from the female lavatory in a passenger car. 253 F.2d at 940. The court assumed that the railroad had been negligent in failing to provide a female employee lavatory, and found that such negligence was the "literal[]" cause of the plaintiff's injury, but held that the negligence was "too far removed . . . in space and time" to satisfy even the "modest" causation requirements of FELA. *Id.* at 940-41. The Sixth Circuit Court of Appeals has phrased

---

[5] Alternatively, a plaintiff may show negligence *per se* by demonstrating that the railroad violated a safety statute. *Id.* at 2643 n.12.

7

its test as whether the plaintiff's injury was "within the risk" created by the negligence. *Szekeres v. CSX Transp., Inc.*, 617 F.3d 424, 429 (6th Cir. 2010) (quoting *Richards v. Consol. Rail Corp.*, 330 F.3d 428, 437 (6th Cir. 2007)).

### C. Did CSX Breach its duty of care?

Plaintiff argues that Defendant breached its duty to provide a safe working environment in two ways—the "loose" seat and a track that caused the train to "bottom out"—which he contends combined to cause his injury.

#### 1. Was CSX Negligent With Respect to the "Loose" Seat?

Plaintiff argues that the seat was defective [Doc. 35 at PageID #: 246]. Plaintiff does *not*, however, argue that Defendant should have been aware of that defect [*see id.* at PageID #: 246, 249-51]. Instead, according to Plaintiff, CSX was negligent *per se* because it violated an applicable safety statute—namely, the Locomotive Inspection Act ("LIA"), 49 U.S.C. § 20701. Violations of the LIA are actionable under FELA without any proof that the defendant knew or should have known of the "unnecessar[ily] danger[ous]" condition. *See Szekeres*, 617 F.3d at 427-28.

The LIA requires that a locomotive's parts and appurtenances be in "proper condition and safe to operate without unnecessary danger of personal injury." 49 U.S.C. § 20701. Violations of regulations promulgated under the LIA will also support a claim for negligence *per se*, *Coffey v. N.E. Ill. Reg'l Commuter R.R. Corp.*, 479 F.3d 472, 477 (7th Cir. 2007), and one such regulation provides that locomotive "[c]ab seats shall be securely mounted and braced." 49 C.F.R. § 229.119(a).

Plaintiff did not articulate this theory in his complaint, and he raises it for the first time in his response to Defendant's motion for summary judgment. Because it was not raised in the complaint, Defendant argues that the Court should "disregard" Plaintiff's LIA theory. Under Fed.

8

R. Civ. P. 8(a), however, a plaintiff need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." It is not necessary to include every legal theory in the complaint, but a plaintiff cannot pursue a theory whose elements are not established by the factual allegations in the complaint. *See Schneid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436-37 (6th Cir. 1988) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984) for the proposition that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under *some* viable legal theory").

Plaintiff stated in his complaint that his injuries were caused by "Defendant's negligence in failing to provide Plaintiff with *safe, necessary, and proper equipment with which to perform his work*, including but not limited to . . . a defective and/or improperly maintained seat. . . . Defendant's failure to properly maintain the locomotive seat and/or its defects caused or contributed to cause Plaintiff's injuries and damages" [Doc. 1 at PageID #: 3-4 (emphasis added)]. This language tracks closely to the language of the LIA, as does language later in the Complaint, where Plaintiff states the seat "was not in a safe and proper condition" [*id.* at PageID #: 5]. Although Plaintiff did not specifically cite to the LIA in his Complaint, the Court finds that the factual allegations made therein, along with Plaintiff's conclusory language that the seat was not in a safe and proper condition, were sufficient to recite the elements of an LIA claim and to place Defendant on notice of a claim asserted pursuant to the LIA.

At the summary judgment stage, however, a plaintiff cannot pursue a theory without evidence to support each of its elements. In his declaration, Plaintiff states that his seat "did not lock," which caused looseness. According to Plaintiff, that looseness was a defect that contributed to his injury. Plaintiff's argument could be read to say that the seat was in an unnecessarily dangerous condition, which would directly violate LIA, or that it was not securely mounted and

9

braced, which would violate the applicable regulation. Defendant argues, however, that Plaintiff's declaration is materially inconsistent with his deposition testimony, and that the declaration therefore cannot create an issue of fact where none would otherwise exist. Defendant correctly states the law: "[A] party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony." *Arel, S.R.I. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006). Even if the affidavit does not directly contradict the prior testimony, it should be disregarded to the extent that the circumstances show that the affidavit "constitutes an attempt to create a sham fact issue." *Id.* at 909 (quoting *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986)). An affidavit is more likely to be a sham when the party was cross examined on the subject but failed to provide an answer, even though he had access to the pertinent evidence at the time of the deposition. *Id.* On the other hand, if the affidavit is based on newly discovered evidence or merely attempts to explain confusion that is reflected in the deposition testimony, it is less likely to be a sham. *Id.*

Plaintiff's declaration clearly states that the seat was loose because it "did not lock" [Doc. 35-1 at PageID #: 256]. During his deposition, however, Plaintiff stated as follows:

> Q: Okay. As I understand it, you say that the seat did not hold you in place.
> A: No, sir.
> Q: Anything wrong with the seat that you know?
> A: It was loose but, I mean, it wasn't the best seat, it was -- it was a loose seat.
> Q: You think it being loose had anything to do with your going out of the seat given what happened?
> A: You know, they twist, they turn. And, you know, it gave way -- when -- when I got bounced, I mean, I hit the seat and bounced off –
> Q: You went up in the air and came down and hit the seat and bounced off?
> A: I -- yeah, I got bounced out of the seat and hit the ground. As far as the seat goes, you know, I'm trying to recollect

10

here. It turns. That's all I can remember, it's got a twist to it.
             You can turn this way and this way. It's very limited because
             you are in the very back, but it turns a few inches here and
             there, it's not solid.
    Q:    It's supposed to be able to turn a little bit, isn't it?
    A:    Right.
    Q:    Is that what you mean by "loose"?
    A:    Yes, sir.
    Q:    So you cannot point to any kind of defect to the seat in the
             form of a part of it was broken or anything –
    A:    I didn't see anything broken or I would have said I'm going
             to turn that in. I didn't see nothing physically broken there.
             But it's an old, sloppy seat, too.
    . . .
    Q:    . . . So no defect that you could tell about the seat just by
             looking at it that would lead you to write it down on the
             calendar day report.
    . . .
    A:    That's true.

[Doc. 29-1 at PageID #: 152-53]. There was nothing ambiguous about Plaintiff's deposition testimony with respect to the seat that required any clarification, and the statement in Plaintiff's declaration that references the seat not "locking" contradicts Plaintiff's testimony that he did not notice any specific, observable defect with the seat. The Court therefore finds Plaintiff's statement in his declaration to be directly contradictory to his previous deposition testimony, and the Court will disregard Plaintiff's declaration statement that the seat did not "lock" as support for an LIA claim.

As for Plaintiff's statements about the seat in his deposition, Plaintiff testified that the seat was "loose," was "not solid," and was "old" and "sloppy." Although Plaintiff could not point to an obvious defect in the seat he would have needed to report, the Court finds that Plaintiff's deposition testimony with regard to the seat is sufficient to create an issue of material fact to submit to a jury. Plaintiff's deposition testimony may be enough for a reasonable jury to determine that the seat was not in a "proper condition" and was not "safe to operate without unnecessary danger of personal

11

injury." *See* 49 U.S.C. § 20701(1).

Moreover, there is a genuine issue of material fact as to the origin of Plaintiff's injuries because there is a dispute as to whether the incident alleged by Plaintiff actually occurred. Plaintiff claims in his complaint and in his deposition that he completely fell out of his seat during this particular trip [Doc. 1 at PageID #: 3 & Doc. 29-1 at PageID #: 151]. Plaintiff testified that he fell out of his seat towards the right, the engineer, David Tuggle, laughed at him, Plaintiff told Mr. Tuggle that he had hurt himself, and Plaintiff got back up after 20-30 seconds and sat back down in his seat [Doc. 29-1 at PageID #: 151]. Defendant submitted the affidavit of Mr. Tuggle, however, in which Mr. Tuggle states he never saw Plaintiff fall out of his seat on any trip, he did not see Plaintiff fall out of his seat during the trip Plaintiff describes, Plaintiff never told Mr. Tuggle that he was injured, and he has never seen anyone fall out of a seat on any trip [Doc. 39-1 at PageID #: 313-14]. According to Mr. Tuggle's affidavit, if Plaintiff had ever indicated he was injured, Mr. Tuggle that he would have been required to report the incident immediately [*id.* at PageID #: 314]. The Court finds that there is a genuine issue of material fact as to whether Plaintiff ever fell out of his seat and the resolution of this issue depends on the jury's credibility determination.

Should the jury find Plaintiff's testimony credible and determine that Plaintiff did indeed fall out of his seat, the jury will also have a duty to decide, from the testimony presented, whether the facts establish that Plaintiff's alleged injuries were caused by a seat that was not "safe to operate without unnecessary danger of personal injury" to invoke Defendant's liability under the LIA.

### 2. Was CSX Negligent With Respect to the Track?

Plaintiff acknowledges that in order to show negligence, he must show that the track was in an unsafe condition "which Defendant knew or should have known about." [Doc. 35 at PageID #: 246]. In his deposition, Plaintiff testified as follows with respect to whether this type of "bottoming

12

out" had ever happened before:

> Q: Had there -- you had been up and down this track as a conductor, what, a couple hundred times before?
> A: Oh, yeah.
> Q: Had this ever happened in that place before?
> A: Not to the extremity that that happened.
> . . .
> Q: Had it ever happened in any way at that place before in any extremity, to your knowledge?
> . . .
> A: I'm sure it has.
> Q: No, your memory, had it ever happened to your memory?
> A: Yes, I remember having – not what happened like that, but I remember having a situation occur right there at the switch before. There was no slow order there to sit there and tell me there was any problem. I wasn't expecting that.
> Q: Well, tell me about the situation that had occurred at that place before this incident.
> A: Well, been on other locomotives that had not handled that curve well.
> . . .
> Q: . . . Well, then, are you telling me that you were aware that there was a potential problem in that vicinity before this day?
> A: No, I was not aware of it. I had no slow order that told me there was a problem there.
> Q: Based upon your experience of riding on trains through this area, were you aware that there was a potential of bottoming out like you just described?
> A: No. No, sir.
> . . .
> Q: So that means to me, I don't want to put words in your mouth, but if you did not think there was a problem there, you had never experienced any problems there before.
> A: Oh, I've had - I've experienced problems there before, I mean, they've had slow orders on that switch before . . .

[Doc. 29-1 at PageID #: 149]. In his declaration, Plaintiff stated, "[p]rior to the date of my injury it was common knowledge on the railroad that the section of track where my train bottomed out had caused other trains to bottom out" [Doc. 35-1 at PageID #: 255]. Plaintiff further stated that "it is not proper or safe for locomotives to bottom out in the manner in which they routinely did at the

13

Kincaid signal" [*id.*]. Again, the Court finds the statements in the declaration to be directly contradictory to Plaintiff's deposition testimony and an attempt by Plaintiff to create an issue of fact. Plaintiff never testified during his deposition that trains routinely bottomed out at the Kincaid signal. Indeed, Plaintiff stated trains had experienced problems at that signal before, but he was not aware of the potential for "bottoming out" at that location. Moreover, Plaintiff never testified that he had notified anyone at CSX about a problem with the track at this switch or that anyone at CSX had knowledge of some deficiency in the track. Plaintiff's declaration should contain statements as to his personal knowledge, not the knowledge of others – therefore, Plaintiff's statement that it was "common knowledge," without more, can only be considered to mean that *Plaintiff* had common knowledge of some problem with the track and cannot be attributed to Defendant. The Court concludes, therefore, that Plaintiff's statement as to "common knowledge" of a track problem – as it pertains to Defendant's knowledge – has no basis and is not supported by the evidence before the Court. The Court will rely solely on Plaintiff's deposition testimony to determine if there is a genuine issue of material fact as to the condition of the track.

In support of its Motion, Defendant submitted the affidavit of Jackie Teffeteller, a Track Inspector. Mr. Teffeteller is familiar with track problems which could cause a train to "bottom out" and has inspected the track in question for several years. Mr. Teffeteller asserted that he knows no train has ever "bottomed out" in this area and he has never heard of any train "bottoming out" on this area of the track [Doc. 39-2 at PageID #: 316]. Mr. Teffeteller stated the tracks in the area at issue have always been in "profile" and "cross level," meaning that the rails are level and even with one another [*id.* at PageID #: 317]. Mr. Teffeteller indicated the engineer of the train would report any rough tracks or tracks out of profile or cross level to the dispatcher, who would report it to Defendant's Engineering Desk, and he would make an inspection [*id.*]. Mr. Teffeteller also stated

14

there has never been a slow order issued for this area of the track based on rail alignment conditions [*id.*].

The Court finds the discrepancy between Plaintiff's deposition testimony and Mr. Teffeteller's affidavit sufficient to create a genuine issue of material fact for the jury as to whether Defendant was on notice of any track problem at the Kincaid signal. Although Plaintiff's testimony on this topic is somewhat vague, Plaintiff testified that he rode on trains which experienced problems on that part of track before and that Defendant had previously placed slow orders on that section of track. In contrast, Mr. Teffeteller stated that there had never been any problems with the track in that area and that there had never been a slow order in the area. If the jury found Plaintiff's testimony credible, the jury could reasonably infer that Defendant was on notice of a problem by virtue of previous slow orders on that section of track and the engineer's responsibility to report rough or problematic tracks to the dispatcher. The jury could further infer that Defendant failed to take action to correct the problem once it was on notice. The Court concludes, therefore, that Plaintiff has raised an issue of material fact as to a possible breach of the duty of care by Defendant.

**D. Does Plaintiff Need to Present Expert Testimony?**

Defendant argues that Plaintiff has no proof of negligence because he has not disclosed any expert witnesses who will assert Defendant was negligent or breached a duty as to the seat or the track [Doc. 30 at PageID #: 163-64]. Defendant also emphasizes arguments about Plaintiff's deficient testimony as to the standard of care and notice [Doc. 39 at PageID #: 297-98]. The Court has already determined, however, that Plaintiff has submitted sufficient evidence as to the defective seat to support negligence *per se* under the LIA and evidence from which the jury can infer notice (duty) and a breach of the duty of care as to the track.

With regard to Plaintiff's LIA claim, if the jury finds Plaintiff's testimony credible and finds

15

the seat was not in a safe and proper condition, Defendant has violated the LIA as a matter of law and duty and breach of duty are conclusively determined. As a practical matter, the Court cannot identify any requirement for expert testimony as to the allegedly defective seat because Plaintiff's testimony does not allege a problem other than the seat being "loose," "old," and "sloppy." Plaintiff will have the opportunity to explain what he means by this description, and the members of the jury can assess Plaintiff's testimony in light of their individual, everyday experiences with seats. Naturally, Defendant will have the opportunity to cross examine Plaintiff and to present its own testimony, presumably to establish that this particular seat was just like any other locomotive seat, was properly maintained, and was in a safe and proper condition.

Defendant has presented no authority for the proposition that expert testimony is required in a case such as this and the Court has found none. The Court finds that Plaintiff does not need to present expert testimony as to the alleged track problem that caused the train to "bottom out." Plaintiff is qualified to testify as to how trains routinely ride over tracks by virtue of his years of experience as a conductor and engineer for railroad companies. Plaintiff previously worked for approximately 12 years as a trainman, conductor and engineer for a railroad in Florida and had worked for CSX as a conductor for approximately two and a half years before the incident in February 2008 [Doc. 29-1 at PageID #: 133, 135, 136, 138]. Plaintiff claimed that he had ridden over this section of track hundreds of times and had experienced problems with trains not handling this area of track well in the past [*id.* at PageID #: 148-49]. Plaintiff's extensive work history on locomotives and familiarity with this section of the track provide a relatively sound basis for his testimony concerning why slow orders are placed on tracks, what slow orders mean, how trains typically ride over tracks, and what was different about this particular incident. As with Plaintiff's LIA claim, Defendant can cross examine Plaintiff as necessary on this issue and can present its own

16

testimony from Mr. Teffeteller and any others to refute Plaintiff's assertions.

The Court concludes that Plaintiff need not present expert testimony as to his claims that his seat was "loose," "old," and "sloppy" and the train "bottomed out" and, therefore, **FINDS** that genuine issues of material fact exist as to Defendant's negligence with respect to both the allegedly defective seat and track.

### III. CONCLUSION

For the reasons above, Defendant's motion for summary judgment [Doc. 29] is **DENIED**.

SO ORDERED.

ENTER:

                                        s/ *Susan K. Lee*
                                        SUSAN K. LEE
                                        UNITED STATES MAGISTRATE JUDGE